# CASES

## ARGUED AND DETERMINED

# SUPREME COURT OF MINNESOTA.

### JANUARY TERM, 1856.

---

JOHN N. AHL, Respondent, *vs.* ROSWELL B. JOHNSON, Appellant.

An Agreement to *sell* and *convey* Real Estate upon condition of payment of the consideration-money at a future specified time, is an executory contract; and no sale is made or consummated, and no rights acquired, except upon full payment of the consideration-money, and performance of the condition, at or before the time agreed upon.

In such a contract, the time of payment or performance of the condition precedent is an essential element; and such condition must be performed within the specified time, before a party may claim any right to the property.

But Courts of Equity will relieve where unavoidable events or circumstances beyond the control of the party seeking relief have rendered the performance of the condition within the specified time an impossibility; but in such case, the party seeking relief must show affirmatively that his failure to perform was not the result of gross negligence or *laches* on his part.

A Complainant seeking relief by a decree for specific performance, must show performance of all conditions, or satisfactorily excuse any default or negligence; and a Court of Equity has no more power than a Court of Law to administer relief to the gross negligence of suitors.

This suit was commenced by Bill in Chancery, in the District Court for the County of Washington, Second Judicial District, and was brought to compel the specific performance on the part of Appellant of a written Agreement to sell and convey a town-lot in the City of Stillwater, in said County.

The Bill recites a written Agreement executed by the parties, dated the 15th of June, 1850, by the terms of which the Defendant Johnson agreed to sell and convey to the Complainant the lot in question, upon the payment of the consideration-money (one hundred and ninety dollars) with interest, at a future day, to wit: the first of May, 1851—which sum the Complainant undertook to pay on or before that day.

The Bill further states that on the 2d of July, 1850, the Complainant made a payment of sixty dollars, to apply upon the purchase-money : and that the Defendant agreed to allow the further sum of thirty dollars and thirty-three cents, in consequence of an alleged mistake or misrepresentation concerning the western boundary line of the lot.

And further states, that the Complainant had tendered and offered unto the Defendant the full balance of said purchase money and interest due and owing by virtue of the Agreement, and that he had always been ready and willing to perform his part of the said agreement, &c. and that the balance was unproductive in his hands : with the usual prayer for a specific performance, Injunction, &c.

The Answer of the Defendant (upon oath) admits the execution and delivery of the Agreement recited in the Bill—the payment of sixty dollars of the purchase-money on the 2d of July 1850, and that he consented to remit the sum of thirty-three dollars and thirty-three cents, on account of the mistake in the boundary line of the lot, but denies that such mistake was on account of misrepresentations, and denies that he was in equity bound to make any such deduction from the purchase money.

But the Answer expressly denies that the Defendant ever gave possession of the lot to the Complainant, or that he consented to his taking possession thereof until the full amount of the purchase money should be paid.

And denies that the Complainant had always been ready

or willing to pay the balance due upon the purchase, but, on the contrary, charges the truth to be : that when the same became due and payable, the Defendant demanded payment from the Complainant, and then offered to execute and deliver to him a warranty deed for the lot, in compliance with the agreement, upon the payment of the purchase-money, and that the Complainant refused to pay the same : and that he had at different times between the first of May, 1851, (the date when the purchase-money became due,) and the middle of October following, called upon Complainant and requested payment, and offered and tendered to him a deed of the lot, and that the the Complainant on every occasion of such request refused to pay.

To which answer, Complainant filed a general Replication.

William Holcombe was afterwards appointed a Special Master in the cause, before whom the testimony was afterwards taken and reduced to writing.

Upon the part of the Defendant, the articles of agreement admitted in the pleadings, were offered and filed.

William H. Morse testified that while acting as Clerk in the employ of the Defendant between the 20th of October and the 18th of November, 1851, he heard the Defendant ask the Complainant for the balance due on that lot, which lot witness understood to be the same that he (Complainant) had built a house on. That said Ahl complained, in reply, that he had a good many debts out, which, as soon as he could collect in, he would settle up with Defendant. Heard Defendant ask Complainant for the balance due on the lot, at least twice, if not three times. Complainant replied that he had no money, that he didn't want Defendant to shove him, and would pay the balance due on the lot as soon as he could collect in. Understood Johnson to say to Complainant that he was ready to make him a deed whenever he paid the balance. Had no recollection of hearing the Defendant say that the time of payment had expired, and that he (Complainant) would not get a deed from him for the lot.

Elijah A. Bissell testified that he was at the house of Complainant in Stillwater about the 20th of December, 1852, when he visited said Ahl on his own business, when Defendant,.

Johnson, called and said he understood that he, the Complainant, had a sum of money for him for the lot, and that he, Defendant, was ready to give him a deed for the lot upon the receipt of the money, which money Johnson then demanded of the Complainant and called witness to notice the same. The amount of money demanded by Defendant was $106,12. At the same time, Johnson tendered the deed for the lot, (which is exhibited to witness,) upon which witness put his private mark (the letter " B ") at that time. Complainant replied that he had had some money, but that he had paid it out. He had not the money then, and did not offer to give the Defendant any money.

Upon cross examination, witness states that the deed was not read to or by Complainant at the time of the tender. Witness put his private mark on the deed at Dr. Ahl's house. Witness never read the deed before to-day, and had not seen it since he put his mark on it. It was tendered in the evening about seven o'clock, at the same time the money was demanded. Witness knows the deed only by his private mark ; does not know whether the same was filled up when tendered, as it now appears. About the time Johnson was leaving the house, Complainant stated that he had deposited some money with Bartlett, which witness understood to be to pay Johnson for the lot.

Charles D. Gilfillan testified that he was a Notary Public, and took the acknowledgment of the deed from Johnson and wife to Complainant on the 18th of December, 1852, and that said deed was filled up and executed as it purports to have been, at the time he took the acknowledgment. He witnessed the execution thereof. Said deed was tendered to Complainant by M. E. Ames on the 23d of December, 1852, at his law office in Stillwater, and at the same time demanded the money due the Defendant for the premises mentioned in the deed, stating that he was instructed by Defendant to make such tender and demand, and that Complainant replied that he had no money, not even enough to pay his taxes. That he had given some money to Bartlett, and Johnson ought to have taken it from him then. That Bartlett was away, and Johnson must wait until he came back. Harley Curtis was present at the time.

On cross examination, states that Solicitor Ames did not, as he thinks, demand any particular sum of money; thinks the deed was not read to Complainant by Ames, or any one else.

Harley Curtis, in his testimony, corroborates the evidence of Gilfillan; and says further, that at the time of the tender, Solicitor Ames " demanded from Ahl the sum of money which "the Complainant's Bill in this suit alleges had been tendered "to the Defendant." He, witness, marked the deed with his name, " H. Curtis," at the time of the tender.

M. E. Ames testified that the agreement was placed in his hands as an Attorney by the Defendant, in the latter part of October, 1851, with instructions to call upon and collect the money from Mr. Ahl, and in case of payment to deliver him a deed. Witness met Complainant at the " Lake House," about the last of October or first of November, and told him he would deliver him a deed upon payment of the money. Complainant replied that he could not raise the money at that time, and that Mr. Johnson must hold on in the matter. Defendant directed the witness, as his Solicitor, to deliver the deed to the Complainant upon his paying into his, Solicitor's, hands the balance that was admitted to be due upon the lot, as stated in the Bill of Complaint, (and further corroborated the testimony of the witnesses Gilfillan and Curtis.)

Cross examined, says, at the time he saw Complainant at the "Lake House" in October or November, 1851, no suit had been commenced; and at the time of the tender of the deed, nothing was said about settling this suit or the costs of it.

The original deed from Johnson and wife to the Complainant, was annexed to the Depositions and referred to as exhibit " B."

The Complainant offered the Deposition of Frederick K. Bartlett, who testified that on the 1st of November, 1851, he tendered the Defendant $107,10 in lawful currency of the United States, (giving a description of each piece,) and said to Mr. Johnson, "I hereby offer and tender to you $107,10, as "principal and interest in full to this 1st day of November, "1851, due upon contract signed by yourself," &c., (giving description of the contract mentioned in the Bill,) and then and there demanded a deed of said property. " And you are here-

"by notified that the said sum so tendered is always in readi-
"ness to be paid by F. K. Bartlett, at his house in Stillwater."
The money was placed upon the table, Mr. Johnson sitting
near the same, and I said, there is the money. He got up and
went out of the office, and did not take it, nor did he offer to
give me a deed, at any time, for said Ahl.

The foregoing is the substance of the evidence offered on
the part of the Complainant and Defendant on the trial of the
issues of fact herein, touching the questions of "tender," and
upon the hearing the Court decreed a specific performance of
the contract upon the payment by the Complainant to the De-
fendant, of the balance admitted to be due in the Bill, for
principal and interest, and for costs, &c.

And the cause comes to this Court upon Appeal from the
final decree of the District Court.

Points relied upon by the Appellant's Counsel for a rever-
sal of the decree:

*First.* That the Agreement made on the 15th day of June
1850, between the parties, and set forth in the Bill and con-
tained in the evidence, was an *executory agreement* by the De-
fendant *to sell* and convey the premises therein mentioned at a
future specified time, upon condition of the payment of the
consideration-money *at the time* agreed upon, but no sale was
ever made or consummated.

*Second.* That it was the intention of the parties in this case
to make *the time* of payment specified an essential part of the
contract to sell, and the *time* of payment was an essential element
by the terms of Agreement, and the Agreement is conclusive
evidence thereof. 7 *Paige's Ch. Rep. p.* 22, *Wells vs. Smith;*
4 *Johnson's Ch. Rep. p.* 559, *Hatch vs. Calb;* 2d *Vol. Story's
Eq. Juris. p.* 96, *Sec.* 771; 1 *Johnson's Ch. Rep. p.* 370, *Ben-
edick vs. Lynch.*

*Third.* That the payment of the whole amount of the con-
sideration money, and the interest at the time it became due,
viz: on the first day of May, 1851,—was a condition precedent
in the agreement to be performed by the Complainant at the
time specified.

*Fourth.* The condition precedent, contained in an agree-

ment to be performed by a party, must be fully performed on his part, and at the time agreed upon, before he is entitled to ask a specific performance of the other party, and without which Courts will not compel a specific performance.   10 *Johnson's Rep. p.* 203, *Cunningham vs. Morrell ;* 5 *Denio's Rep. p.* 406, *Paige vs. Att ;* 18 *Wendell's Rep. p.* 187 *;* 13 *ib. p.* 258 ; 8 *ib. p.* 615, *Slocum vs. Despard ; Chitty on Contracts* (*4th Am. Ed.*) *pp.* 737, 738 ; *Story on Contracts* (*2d Ed.*) *Secs.* 27, 32 ; *Ib. Sec.* 633 ; 2*d Vol. Blackstone's Com. p.* 431 ; 3 *Vesey's R. p.* 692 ; *Story on Contracts* (*2d Ed.*) *Sec.* 971.

*Fifth.*   That the Complainant having failed and refused to pay the amount of the consideration-money, and by such failure and refusal having broken and presumptively abandoned the agreement on his part, is not entitled to have it performed on the part of the Defendant.

*Sixth.*   The Complainant having neglected and peremptorily refused to pay the consideration-money for the lot, for an unreasonable length of time after the time fixed for payment by the terms of the Agreement, without assigning or showing *any* excuse or justification for his *laches* and default, has no equities—is not entitled to have it performed on the part of the Defendant; and a Court of Equity ought not to compel a specific performance, and will not administer relief where there is gross negligence on the part of a Complainant.   2 *Story's Eq. Juris. p.* 96, *Sec.* 771 ; 2 *Wheaton's U. S. Rep. p.* 336 ; 2 *Sumner's U. S. Rep. p.* 278 ; 6 *Wheaton's U. S. Rep. p.* 528 *;* 9 *Peters' U. S. Rep. p.* 62 ; 1 *Harrington's Ch. Rep. pp.* 124, 128 ; 6 *Johnson's Ch. Rep. p.* 222 ; 1 *Maddock's Rep.* 423 ; 1 *Johnson's Ch. Rep. p.* 370.

*Seventh.*   The possession taken of the premises by the Complainant was unauthorized by the Agreement and without the consent of the Defendant and in fraud of the Defendant's rights : therefore the Complainant acquired no rights or equities by making improvements thereon.

*Eighth.*   No legal or sufficient tender of the purchase-money admitted to be due to the Defendant is stated in the Bill or proved by the evidence in the cause, and the pretended tender attempted to be proved was coupled with a condition that defeated it.

*Ninth.* The pretended tender to the Defendant of the balance of the consideration-money admitted to be due, was subsequently abandoned by the Complainant's acts, and the tender has wholly failed and the Complainant lost all benefit from it, and the case stands as if no tender had been made or attempted,—Because the tender has not been kept good, nor the money paid into Court or placed under its control; and because, a subsequent demand of the money tendered has been made by the Defendant and refused by Complainant. 2 *Greenleaf's Ev. Sec.* 608; 24 *Pickering's Rep. p.* 168, *Town vs. Trow;* 6 *Cowen's Rep. p.* 13, *Fuller vs. Hulben.*

*Tenth.* The Complainant comes into Court himself in default and without offering any excuse, explanation or justification for his own default, *laches* and gross negligence, and is not entitled to any relief or decree in a Court of Equity. 1 *Story's Eq. Jurisprudence, p.* 78.

Ames & Van Etten, Counsel for Appellant.

Thompson & Parker, Counsel for Respondent.

Upon argument in this Court, the Final Decree of the District Court, appealed from, was reversed; but no opinion has been filed.